IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CLAUDIA T. PILLICH,

     Plaintiff,

v.                                    Case No:  2:17cv634

GOLDBELT FALCON, LLC

Serve:  CT Corporation System, Reg. Agent
        4701 Cox Road, Suite 285
        Glen Allen, Virginia 23060-0000

     Defendant.

## COMPLAINT

COMES NOW the Plaintiff, Claudia T. Pillich ("Plaintiff" or "Pillich"), by counsel, and as and for her Complaint against the Defendant, Goldbelt Falcon, L.L.C. ("Defendant" or "Goldbelt") states as follows:

### The Parties

1.     Plaintiff is a natural person and a resident of Hampton, Virginia.  Plaintiff is a highly technical writer who suffers from severe Attention Deficit Hyperactivity Disorder ("ADHD") and severe mental depression.

2.     Defendant is a corporation incorporated in the state of Alaska with its principal office located in Chesapeake, Virginia. Defendant employs in excess of fifteen employees and has so at all relevant times.   Defendant's business consists of, *inter alia*, assisting with the scientific, technical and engineering needs of their customers who are charged with federal government contracts.

### Jurisdiction and Venue

3.      This court has jurisdiction over the subject matter of this complaint pursuant to 28

U.S.C. §§ 451, 1331, and 1343.  This action is authorized and instituted pursuant to Section

107(a) of the Americans with Disabilities Act of 1990 ("ADA").

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendant

conducts business within this judicial district and division and the events complained of

herein took place within this judicial district and division.

### Exhaustion of Administrative Remedies

5.      Prior to instituting this civil action, Plaintiff timely filed an administrative claim with

the Norfolk office of the Equal Employment Opportunity Commission ("EEOC"). See

Exhibit 1.

6.      On or about September 16 2017, the EEOC mailed a "right to sue" letter to Plaintiff

after failing to resolve the Plaintiff's administrative claim. See Exhibit 2.  Plaintiff received

the letter a few days later. Plaintiff has filed the instant civil action within ninety (90) days

of her receipt of notice authorizing her to file this civil action.

### Facts and Background

7.      On August 4, 2014, Defendant hired Pillich as a "Senior Technical Writer."  At the

time of her hire, Plaintiff was stationed to work for Defendant at the U.S. Coast Guard Base

in Portsmouth, Virginia ("USCG Portsmouth").

8.      Upon information and belief, Pillich was the only technical writer employed by

Defendant diagnosed with severe ADHD and/or depression ("Plaintiff's disability").

Plaintiff's disability qualifies as an impairment that substantially limits numerous aspects of

Pillich's major life activities.  Specifically, Pillich's disability adversely interferes with major

life activities such as thinking, concentrating, punctuality, organizing, dealing with distractions, and sleeping/waking.  Plaintiff's disability significantly restricts the manner and amount of time required to perform such life activities as compared with the average person in the population.

9.      As a result of Plaintiff's disability, Pillich had issues with tardiness and absenteeism while working for Defendant.  Notably, tardiness and absenteeism did not develop as an employment-threatening "issue" until Pillich informed Defendant of her ADHD and depression.

10.     On or about January 10, 2017, Pillich was terminated from employment by Defendant.  The reason for the firing was initially stated in writing as "subpar performance."  Defendant later claimed it fired Pillich for "misconduct."

11.     Plaintiff began working at USCG Portsmouth as a contractor at the beginning of August 2014.  She was informed that contractors had flexible hours, as long as they worked 80 hours during every two-week time period.  During the first four months of her employment Plaintiff typically arrived later in the morning and stayed later than 6 pm in order to fulfill her 8 hour work day requirement.  Defendant did not object to Pillich working past 6:00 pm.

12.     Furthermore, Defendant knew of or should have known of other contractors working past 6:00 pm and did not object.

13.     On January 10, 2015, USCG Portsmouth announced that civilian contractors had to leave the base at or before 6:00 pm.  In response, Pillich began taking work home to complete during hours after 6:00 pm.

14.    On July 15, 2015, Defendant's human resource (HR) manager, Terri M. Seese ("Seese"), presented Pillich with a written "Disciplinary Action Form" dated July 14, 2015. The form alleged "Claudia has been excessively tardy on various occasions during the last few months . . . ." The form, under the section "Previous Infractions within the last 12 months" lists only a single "Verbal" warning.

15.    With Seese at the meeting was Plaintiff's supervisor, Jim O'Brien ("O'Brien"). Pillich expressly explained to Seese and O'Brien that she had ADHD and how it adversely affected her life, including work. Seese imprudently told Pillich that her adult son had ADHD and that it is not considered a disability under the ADA.

16.    Neither Seese nor O'Brien engaged Pillich in any further discussion regarding how her ADHD affects her life and if any reasonable accommodations could assist her. Neither did they question or imply that Plaintiff's alleged tardiness was interfering with her essential job functions.

17.    Plaintiff continued taking work home to address her inability to regularly work 8-hours in the office with the 6pm cutoff, yet still work 80 hours per every two-week period.

18.    Plaintiff continued to work without incident or disciplinary action. On September 27, 2016, Plaintiff received a last-minute request from her supervisor to add more content to a particular project. Plaintiff worked from home, putting in many extra hours, to successfully complete the project. Plaintiff found that working from home under a tight deadline allowed her to be more productive, as there were no distractions or interruptions. Thus, it appeared to be a reasonable accommodation for Plaintiff's disability. She emailed her supervisor to let him know where she was.

19.     On September 30, 2016, Pillich met with her immediate supervisor, Gordon Weeks ("Weeks") and O'Brien.  They informed Pillich that she would no longer be permitted to work from home.  Further, they informed her that she would now have to work an inflexible work schedule – 40 hours a week in the office, while still having to leave the office by 6:00 pm. (between 9:00 am to 6:00 pm at USCG Portsmouth).

20.     At this meeting, Pillich informed Defendant's management of her disability and her need for an accommodation – the proposed change of standard set schedule was the opposite of an accommodation.   Defendant had ensured that Pillich would face further difficulty dealing with her disability.

21.     Neither Weeks nor O'Brien engaged Pillich in any further discussion regarding her disability or an accommodation thereof.

22.     On October 4, 2016, Pillich attended a meeting with the following individuals:  (i) Seeses (then departing HR manager); (ii) Jim Orlando ("Orlando") (Goldbelt operations director); and (iii) Monty McGowan ("McGowan") (HR manager).  Orlando presented Pillich with a "Notice of Written Warning."  The Notice alleged Plaintiff was not reporting to work in a timely manner.  Orlando ordered Pillich to "come up with a plan to address [her] issues."  He then suggested she consider short term disability ("STD") as part of said plan.

23.     None of Defendant's management attempted to engage Pillich in any discussion regarding her disability or accommodations thereof.  Neither did they question or imply that Plaintiff's alleged tardiness was interfering with her essential job functions.

24.     On December 20, 2016, Plaintiff met with Orlando and Seese expecting to discuss her plan.  She never had the opportunity to present the plan she had developed.  To her

surprise, Orlando presented Pillich another Notice, this time threatening termination if she was "late again."  In response, Pillich presented a letter form her doctor explaining in detail her disability and, importantly, stating: "I fully expect a recovery but I am sending you this letter for your records regarding her current condition."

25.     None of Defendant's management attempted to engage Pillich in any discussion regarding her disability or accommodations thereof.  Neither did they question or imply that Plaintiff's alleged tardiness was interfering with her essential job functions.    Rather, Orlando told Pillich that because she presented her doctor's note "this was now a medical issue."

26.     Orlando then instructed Pillich to forward the doctor's note to McGowan to "work out accommodations with her."  Pillich obliged.

27.     Two weeks later, on January 4, 2017, Orland sent Pillich an email directing her to start working at the Goldbelt Falcon office in Chesapeake, Virginia as of January 6, 2017. He further ordered that she was to report to work there every day by 9:00 am.

28.     Once again, in the face of a requested (and previously agreed upon) engagement to discuss accommodations, Defendant instead worsened matters by adding employment conditions that further impeded Pillich's ability to handle her disability.

29.     From Pillich's home in Hampton, the proposed change would increase her morning commute by nearly 30 minutes.  Defendant knew or should have known this, since it was aware of Pillich's address.  The additional commute time was the opposite of an accommodation.

30.     That same day, Pillich emailed McGowan inquiring as to her previous request for an accommodation.  McGowan simply responded that the doctor's note did not obligate Goldbelt to offer an accommodation.

31.     On January 6, 2017, Pillich was unable to make it to her new reporting station by 9:00 am.  That day, Pillich sent an email to Orlando and McGowan again attempting to propose a plan for addressing her need for an accommodation.  Orland acknowledged receipt the next day and confirmed receipt via email.

32.     On January 10, 2017 Pillich again emailed McGowan following up on her December 20, 2016 request for accommodations and included additional information on her condition. When Pillich arrived for work that day Orlando told her McGowan was reviewing her request and would get back to her.  Orlando then told Pillich she should be on disability.

33.     Five-hours later, Defendant fired Pillich, citing "subpar performance."  The Notice did not mention attendance issues.  McGowan further informed Pillich that Goldbelt had given her accommodations but they did not work.

34.     On February 3, 2017, Defendant promised Pillich in writing that it would not oppose her unemployment benefits application to the Virginia Employment Commission ("VEC").

35.     On February 6, 2017, Pillich received notice from the VEC that she did not qualify for unemployment benefits.  The notice indicated that the decision was based on Pillich's "excessive attendance issues."

36.     As a result of Defendant's conduct, Plaintiff has incurred additional physical harm as her disability had progressed and so that she suffers severe sleep deprivation and increased depression.

<u>**JURY TRIAL DEMANDED**</u>

<u>COUNT I</u>
ADA – Failure to Accommodate and Disability Discrimination

37.    Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

38.    At all times relevant herein, Defendant was an "employer" and Plaintiff was an "employee" under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq.

39.    At all relevant times, Plaintiff was a "qualified person with a disability" within the meaning of the ADA.

40.    Defendant was fully aware of Plaintiff's impairment. Despite being aware of Plaintiff's medical conditions, Defendant failed to engage in the interactive process and failed to provide reasonable accommodations as required by the ADA.  Defendant would not have endured any undue hardship by providing Plaintiff the requested reasonable accommodations.

41.    Plaintiff requested to work offsite.   Plaintiff further asked to take work home and/or have a flexible work schedule.   Defendant repeatedly ignored and/or denied Plaintiff's requests.

42.    Defendants violated Pillich's civil rights by discriminating against her on the basis of her disability, history of disability and/or perceived disability in the following respects:

    a.    denying Plaintiff's repeated requests for accommodation, including but not limited to working from home and or working modified hours rather than a set schedule;

    b.    failing to engage Plaintiff in discussions regarding possible accommodations for her disability;

     c.     effectively setting up Plaintiff to fail by demanding that she undertake a longer commute to work.

43.     Defendants violations of the ADA were willful.  Defendants unlawful practices were carried out with malice and/or reckless indifference to Brown's federal rights.

44.     As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has suffered damages, including but not limited to loss of past and future income and fringe benefits, loss of professional reputation, mental anxiety and emotional distress.

COUNT II
ADA  -- Retaliation

45.     Plaintiff repeats and realleges each and every Paragraph of this Complaint as though fully set forth herein.

46.     Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because she engaged in activities protected by the ADA.

47.     Defendant's conduct was intentional and its violations of federal law were willful.

48.     As a direct result of Plaintiff's engaging in such protected activities, she was retaliated against immediately and repeatedly by her supervisors and treated differently (and adversely affected) than her coworkers.  The stated reasons for Defendants' conduct were not the true reasons, but instead were pretext to hide Defendants' retaliatory animus.

49.     Plaintiff should be awarded an appropriate amount for lost wages and benefits, loss of earning capacity and future lost wages and benefits of employment.

50.     Plaintiff is entitled to recover her reasonable attorneys' fees, costs and expert witness expenses pursuant to the ADA.

WHEREFORE, the Plaintiff, Claudia T. Pillich, by counsel prays that this honorable Court grant her the following relief as allowable by law:

a.      Back Pay;

b.      Front Pay;

c.      Economic Damages;

d.      Compensatory Damages;

e.      Non-Economic Damages;

f.      Attorneys' fees and court costs associated with this suit; and

g.      Other such relief as may be appropriate to effectuate the purpose of justice.

Dated: December 11, 2017

Respectfully submitted:

/s/

Todd M. Gaynor (VSB No. 47742)
GAYNOR LAW CENTER, PC
440 Monticello Ave., Suite 1800
Norfolk, Virginia 23510
PH:  757-828-3739
FX:  757-257-3674
EM:  tgaynor@gaynorlawcenter.com